UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LESTER AUBREY BULL,<br><br>        Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | Case No. CV 08-4191 CAS<br>              (CR 04-402 CAS)<br><br>**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

I.   INTRODUCTION

On April 13, 2004, petitioner Lester Aubrey Bull was indicted for conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846 (count one); conspiracy to launder money in violation of 21 U.S.C. §§ 1956(a)(1), 1956(h), 1957 (count two); and criminal forfeiture (count nine).  On January 16, 2007, petitioner pled guilty to count two of the indictment for conspiracy to launder money pursuant to a plea agreement with the government.  On June 25, 2007, petitioner was sentenced to 72 months in prison.  Petitioner did not file an appeal.

On June 25, 2008, petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  On October 23, 2008, the

government filed its opposition. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II.     BACKGROUND

Trial for petitioner and co-defendant Clarence Adolphus was scheduled for January 16, 2007. Prior to this trial date, the government offered petitioner a plea agreement, which petitioner reviewed with his counsel, Donald J. Calabria. Before the matter was called on January 16, 2007, the parties agreed to make several minor factual modifications to the plea agreement, which petitioner and his counsel initialed before signing the agreement. Petitioner pled guilty to count two of the indictment for conspiracy to launder money in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1), 1957. In the plea agreement, petitioner stipulated to facts indicating that he assisted co-defendants Daniel Franco, Juan Franco, and Mauricio Torres in collecting money derived from the sale of drugs that was loaned to co-defendant Clarence Adolphus. Petitioner admitted that in December 2003, he placed calls to Adolphus to collect $250,000 that Adolphus borrowed from Torres, Juan Franco, and Daniel Franco, whom petitioner knew to be drug traffickers. Petitioner further admitted that he knew that the money loaned to Adolphus was drug money which would be used for Adolphus' private jet service, which defendant knew was used by traffickers to transport drugs.

Petitioner appeared before this Court on January 16, 2007, and acknowledged that he read and understood the plea agreement, that he was not forced or coerced in any way to sign the agreement, that he did not need more time to review the plea agreement, that he was not promised anything outside of the plea agreement, and that he was satisfied with his counsel's representation. The Court found that defendant was voluntarily and freely pleading guilty with a full understanding of the charges and potential penalties. At the same hearing, counsel for Adolphus told the court that his client would proceed to trial.

On April 6, 2007, the probation officer disclosed the Pre-Sentence Report to the parties, which adopted the sentencing guideline calculations agreed to by the parties in

the plea agreement. Those calculations were as follows:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 8 | [U.S.S.G. § 2S1.1(a)(2)] |
| Value of laundered funds | : | +12 | [$250,000] |
| Specific Offense Characteristics | | | |
| Drug Knowledge | : | +6 | |
| § 1956 violation | : | +2 | |
| Acceptance of Responsibility | : | -3 | |
| Total Offense Level | : | 25 | |

While the plea agreement stipulated to an offense level of 25, based in part on the $250,000 in laundered funds, the government reserved the right to argue for a higher offense level based on its contention that petitioner was aware that the total amount of laundered funds was $440,000. At sentencing on June 25, 2007, the Court found that the petitioner was aware that the laundered funds totaled $440,000 and raised the offense level by two to 27. Based on an offense level of 27 and defendant's criminal history category of II, the resulting guideline range was 78 to 97 months. However, because each of the cooperating co-defendants received 51 months or less, the Court imposed a sentence of 72 months to avoid unwarranted sentencing disparity, pursuant to 18 U.S.C. § 3553(a)(6), and because the Court believed that a sentence of 72 months would provide adequate deterrence.

III. **LEGAL STANDARD**

    **A.**    **28 U.S.C. § 2255**

In deciding a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, a court must hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; Shah v. United States, 878 F.2d 1156, 1159 (9th Cir. 1989). Furthermore, § 2255 motions based on alleged occurrences outside the record often require an evidentiary hearing. E.g. United States v. Burrows, 872 F.2d 915, 917 (9th

Cir. 1989). However, when a movant's credibility is at issue, no evidentiary hearing is required if the issue of credibility can be "conclusively decided on the basis of documentary testimony and evidence in the record." United States v. Espinoza, 866 F.2d 1067, 1069 (9th Cir. 1989).

### B. Ineffective Assistance of Counsel

To the extent petitioner attributes his procedural default to the ineffective assistance of counsel, petitioner must meet the standard for evaluating a Sixth Amendment ineffective assistance of counsel claim set forth in Strickland v. Washington, 466 U.S. 668 (1984). A lawyer's performance is constitutionally deficient only when it "so undermines the proper functioning of the adversarial process that the [proceedings] cannot be relied upon as hav[ing] produced a just result." Strickland, 466 U.S. at 687. A petitioner claiming ineffective assistance of counsel bears the burden of demonstrating that, under all the circumstances of his case, (1) his counsel's performance was so deficient that it fell below an "objective standard of reasonableness" and (2) his counsel's deficient performance prejudiced him, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hensley v. Crist, 67 F.3d 181, 184-85 (9th Cir. 1995). Furthermore, "[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1987).

## IV.  DISCUSSION

### A. Ineffective Assistance of Counsel

Petitioner contends that his counsel, Donald J. Calabria, failed to object to the incorrect application of the base offense level in calculating his sentence under the sentencing guidelines. Id. at 5. Petitioner argues that with respect to count two, which alleged conspiracy to launder money pursuant to 18 U.S.C. § 1956, his base offense

level should have been calculated at level 23, pursuant to U.S.S.G. § 2S1.1(a).[1] Id. Petitioner further argues that his probation officer estimated that he was responsible for laundering $250,000 and his offense level therefore should have been increased by two levels. Id. Moreover, petitioner contends that, because he was convicted pursuant to 18 U.S.C. § 1956, a two level enhancement should have applied, increasing his offense level by two more levels, yielding a total offense level of 27. Id. at 6. Petitioner further contends that his offense level should have been reduced by three levels "based on acceptance of responsibility pursuant to § 3E1.1(a)-(b)." Id. Therefore, petitioner argues, his total offense level should have been twenty-four, which given his criminal history category of II, should have resulted in an imprisonment range of 57 to 71 months. Id. Petitioner asserts that his probation officer instead calculated his offense level pursuant to U.S.S.G. § 2S1.1(a)(2), which resulted in a total offense level of twenty-five and an imprisonment range of 63 to 78 months. Petitioner was ultimately sentenced to 72 months of imprisonment. Id.

Petitioner further contends that his counsel's failure to conduct an investigation as to his eligibility for U.S.S.G. § 2S1.1(a)(1) fell below an "objective standard of reasonableness." Id. at 6 (citing United States v. Franks, 230 F.3d 811, 814 (5th Cir.

---

[1] U.S.S.G. § 2S1.1(a) provides that the base offense level for laundering of monetary instruments can be calculated in one of two ways

> (1) The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined; or
>
> (2) 8 plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the laundered funds, otherwise.

U.S.S.G. § 2S1.1(a)(1)-(2)

5

2000)). Petitioner argues that he was "entitled to offer evidence that he was eligible for an offense level computation pursuant to § 2S1.1(a)(1)." Id. at 7. Petitioner contends that his counsel's "deficient performance" prejudiced him because he was "sentenced to 72 months – one month longer than the maximum permissible guideline sentence had the Sentencing Guideline been applied properly." Id.

The government responds that defense counsel's actions were not outside the range of professionally competent assistance. Opp'n at 12 (citing Strickland, 466 U.S. at 687-690). The government argues that there was no error in calculating petitioner's sentence because U.S.S.G. § 2S1.1(a)(1) is not applicable in this case. Opp'n at 18. The government argues that the offense level for money laundering is determined pursuant to § 2S1.1(a)(1) only if the petitioner committed the underlying offense. Id. The government contends that although petitioner admitted that he laundered proceeds derived from drug trafficking, he was not held accountable for the underlying drug conspiracy charge, which was dismissed as to him. Id. Additionally, the government argues that even if § 2S1.1(a)(1) applies, petitioner has not explained how he concludes that his offense level would be twenty-three. Id. The government contends that the base offense level under § 2S1.1(a)(1) would be twenty two – the base level of eight plus fourteen levels for laundering $440,000 – before adding levels for specific offense characteristics. Id. The government further contends that petitioner has not suffered any prejudice because his sentence was properly calculated. Id.

The Court concludes that no evidentiary hearing is required to resolve this matter because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Defense counsel's failure to advocate for the application of U.S.S.G. § 2S1.1(a)(1) did not fall below an "objective standard of reasonableness" because petitioner was not eligible for a sentence pursuant to § 2S1.1(a)(1). Petitioner was not found responsible for the underlying drug conspiracy charge, which was dismissed as to him, and therefore was properly sentenced under U.S.S.G. § 2S1.1(a)(2). See U.S.S.G. § 2S1.1(a)(1)-(2); United States

v. Anderson, 526 F.3d 319, 324 (6th Cir. 2008). Therefore, the Court concludes that defense counsel's conduct did not fall below an "objective standard of reasonableness" and did not constitute ineffective assistance. Strickland, 466 U.S. at 688.

### B. Invalid Guilty Plea

Petitioner argues that his guilty plea is invalid because it was based on material misinformation provided by his counsel which rendered his plea "involuntary and unknowing." Mot. at 7. Petitioner contends that he pled guilty because he was "told by counsel that if he went to trial he would definitely get life but that if he pleaded guilty he would get a sentence of about 3-4 years, and that Mr. Adolphus had already pled guilty and [was] ready to testify against him." Id. at 8. Petitioner further contends that both of these statements were "grossly inaccurate" and fell below the "objective standard of competence of attorneys in criminal cases." Id. Petitioner argues that "even though the maximum punishment as to count one was life ... there was no reasonable basis to conclude that the guidelines would have resulted in a life sentence after trial." Id. Petitioner further argues that "[t]here are no set of facts known presently which could possibly have raised the offense level to 43, the level necessary to trigger a mandatory life sentence." Id. Additionally, petitioner argues that based on the evidence available to defense counsel at the time of the plea, "the best petitioner could have hoped from the plea was ... a range of 63-78 months ... a far cry from 3-4 years." Id. at 9. Plaintiff argues his counsel's representations regarding his likely sentence and Mr. Adolphus' willingness to testify against him were "grossly inaccurate" and fell below the "objective standard of reasonableness." Id. at 10 (citing Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986) ("the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys."); United States v. Leonti, 326 F.3d 1111, 1122 (9th Cir. 2002)).

Petitioner further argues that his guilty plea was involuntary due to his counsel's "threats and coercion" concerning Adolphus' willingness to testify against him. Id. at

10. Petitioner contends that Adolphus was not willing to testify against him and that his counsel purposefully withheld information from him regarding the plea agreement until the day he was to appear in court. Petitioner contends that "when a defendant is pressured to plead guilty with very short notice with an incorrect assessment of the sentence which he will face if convicted at trial, as well as the explicit threat that his co-defendant Mr. Adolphus had pleaded guilty and ready to testify against him, the plea has been obtained ... as a result of impermissible coercion." Id. at 11.

The government contends that petitioner's claims are clearly refuted by defense counsel's declaration and petitioner's admissions in his plea agreement and at the plea hearing. Id. at 11. The government argues that petitioner confirmed in his plea agreement and under oath at his plea hearing that his decision to plead guilty was not based on any representation outside the four corners of the plea agreement. Id. The government further argues that defense counsel explained the mandatory minimum and maximum statutory penalties and the application of the federal sentencing guidelines to petitioner. Id. at 14 (citing Calabria Decl. ¶3). Moreover, the government argues that defense counsel never told petitioner that he would "definitely" receive a life sentence if he went to trial and never promised or assured petitioner that he would receive a 3-4 year sentence, or any other specific sentence, if he pled guilty. Id. (citing Calabria Decl. ¶ 5).

The government further argues that defense counsel never told petitioner that Adolphus had pled guilty and would testify against him. Id. at 15 (citing Calabria Decl. ¶ 6). The government contends that defense counsel's assertion is consistent with the fact that petitioner was present in the courtroom when Adolphus notified the Court that he decided to go to trial and would not plead guilty. Id. at 11, 15. The government further contends that petitioner acknowledged in the plea agreement that "no one – not the prosecutor, petitioner's attorney, or the Court – can make a binding prediction or promise regarding the sentence petitioner will receive, except that it will be within the statutory maximum." Id. at 15 (citing Plea Agreement ¶ 21). Additionally, the

government argues that petitioner declared during the hearing on January 16, 2007, that he read and reviewed the plea agreement with defense counsel, that he understood it, and that he accepted its terms. Id. at 16.  The government further argues that at the January 16, 2007 hearing petitioner told the Court four different times that his guilty plea was not based on any promise or assurance outside of the plea agreement.  Id.

The government further argues that petitioner's guilty plea is not invalid due to the fact that he received the government's plea offer on "short notice."  Opp'n at 16 fn. 5.  The government argues that the Court clearly offered petitioner additional time to review the agreement, which he declined.  Id.  Moreover, the government argues that defense counsel kept petitioner informed of all plea discussions with the government.  Id. (citing Calabria Decl. ¶ 3).

Additionally, the government argues that petitioner has not suffered any prejudice as a result of defense counsel's actions.  Id. at 19.  The government contends that petitioner failed to show that defense counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Id. (citing Denham v. Deeds, 954 F.2d 1501, 1505 (9th Cir. 1992)).  The government argues that petitioner has not suffered any prejudice because the record establishes that petitioner "understood the consequences of his guilty plea, that he was not promised or assured of any specific sentence, and that his plea was free and voluntary."  Id.

The Court concludes that no hearing is required to resolve petitioner's motion as it pertains to alleged misrepresentations made by defense counsel.  Petitioner's representations in his moving papers contradict statements made to this Court on June 25, 2007.  Therefore, no evidentiary hearing is required because the issue is one of credibility that can be "conclusively decided on the basis of documentary testimony and evidence in the record."  United States v. Espinoza, 866 F.2d 1067, 1069 (9th Cir. 1989).

A simple review of petitioner's plea agreement reveals that his claims are

unfounded and directly contradicted by his own admissions.  Petitioner's plea agreement clearly states that

> I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

January 16, 2007 Plea Agreement at 13.  Petitioner also made representations to this Court that his plea was completely voluntary and that it was not based on any promises or representations made outside of the plea agreement

> The Court:   Has anyone made a promise to you that's not set forth in your plea agreement that induced you to plead guilty?
> 
> Defendant:   No.
> 
> The Court:   So all the promises you're relying on in entering your plea are contained in the four corners of the plea agreement; is that correct?
> 
> Defendant:   Yes.
> 
> . . .
> 
> The Court:   Okay.  Are you pleading guilty freely and voluntarily?
> 
> Defendant:   Yes, ma'am.
> 
> The Court:   Are you pleading guilty because you are guilty and for no other reason?
> 
> Defendant:   Yes, ma'am.
> 
> The Court:   Has anyone threatened you, coerced you or anyone close to

|   |   |   |
|---|---|---|
| | | you or forced you to plead guilty? |
| | Defendant: | Yes, ma'am – no, ma'am. |
| | The Court: | Okay. You're sure of that? |
| | Defendant: | Positive. |
| | The Court: | Has anyone made any promises or assurances of any kind to you or anyone close to you that induced you to plead guilty other than what's set forth in the plea agreement? |
| | Defendant: | No. |

1/16/07 Tr. 10:5-16, 19:6-21. Furthermore, petitioner's counsel declares that he never told petitioner that he would "definitely" receive a life sentence and never promised or assured petitioner that he would receive a three or four year sentence if he pled guilty. Calabria Decl. ¶ 5. Petitioner also told the Court at his plea hearing that he understood that neither his counsel nor the Court could tell him with any certainty what his sentence would be

|   |   |   |
|---|---|---|
| | The Court: | Do you also understand that after your advisory guideline range has been determined, the Court has the authority in some circumstances to depart from the guidelines and impose a sentence that is more or less severe than the sentence called for by the guidelines? |
| | Defendant: | Yes, ma'am. |
| | The Court: | And therefore do you understand that neither your attorney nor the Court can tell you today with any certainty which guidelines apply to you and what your sentence will be? |
| | Defendant: | Yes. |

1/16/07 Tr. 14:24-15:9. Petitioner's counsel further declares that petitioner knew that a 72 month sentence was possible and that counsel never told petitioner that Adolphus had pled guilty and would testify against him if he went to trial. Id. ¶ 5-6. Additionally, the record indicates that petitioner was present when Adolphus declared

to this Court that he would not plead guilty and that he desired to go to trial.

Given the state of the record, the Court concludes that petitioner's claim that his plea was based on misrepresentations made by his counsel is not credible. Therefore, the Court cannot conclude that defense counsel's conduct fell below an "objective standard of reasonableness." Strickland, 466 U.S. at 688. Petitioner's sentence was not the result of a deficient performance by his attorney, but rather the result of petitioner's admissions and stipulations which are presumed to be true.

### C. Vacated 1998 State Conviction

Petitioner argues that his 1998 state perjury conviction has been vacated, pursuant to California Penal Code § 1203.4, and that he is therefore entitled to a review of his federal sentence, which was enhanced on account of that conviction, pursuant to U.S.S.G. § 4A1.2. Id. at 13 (citing United States v. Guthrie, 931 F.2d 564, 572 (9th Cir. 1991)). Petitioner contends that his criminal history level needs to be corrected to reflect category I, rather than category II. Id.

The government responds that petitioner's 1998 state perjury conviction was properly counted for criminal history purposes. Opp'n at 20. The government argues that a California state conviction set aside pursuant to California Penal Code § 1203.4 is not "expunged" for the purposes of U.S.S.G. § 4A1.2(j), and therefore petitioner is not entitled to a recalculated criminal history score. Id. at 21 (citing United States v. Hayden, 255 F. 3d 768, 771 (9th Cir. 2001)).

The Court concludes that petitioner is not entitled to a review of his sentence pursuant to U.S.S.G. § 4A1.2(j). Section 4A1.2(j) does not apply to convictions that are set aside "for reasons unrelated to innocence or errors of law. U.S. Sentencing Guidelines Manual § 4A1.2(j), cmt. n. 10. The Ninth Circuit has concluded that a conviction set aside pursuant to California Penal Code § 1203.4 does not fall "under Section 4A1.2(j)'s exception for 'expunged' convictions." Hayden, 255 F. 3d at 772. Therefore, petitioner is not entitled to a review of his sentence.

### D. The Supreme Court's Decision in United States v. Santos

12

    Petitioner argues that the Supreme Court's definition of "proceeds" in <u>United States v. Santos</u>, 128 S. Ct. 2020 (2008), "requires that petitioner receive the opportunity to challenge his sentence in collateral review." Mot. at 17 (citing <u>Schiro v. Summerlin</u>, 124 S. Ct. 2519, 2522 (2004) ("When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review")). Petitioner further argues that "[b]ecause the Supreme Court's determination that the term 'proceeds' only refers to 'profits' effectively narrows the interpretation of the money laundering statute, there [exists] a strong possibility that petitioner stands sentenced and incarcerated for acts that the law does not make criminal." <u>Id.</u> at 18.

    The government responds that the Supreme Court's decision in <u>Santos</u> does not invalidate petitioner's conviction. Opp'n at 21. The government argues that the Supreme Court's plurality opinion, which concluded that "proceeds" always means "profits," was only endorsed by four Justices. <u>Id.</u> at 22 (citing <u>Santos</u>, 128 S. Ct. at 2025). The four dissenting Justices, the government argues, insisted that "proceeds" always means "gross receipts." <u>Id.</u> at 22-23 (citing <u>Santos</u>, 128 S. Ct. at 2044). The government contends that Justice Stevens cast the deciding vote in concluding that "proceeds" means "profits" for the purposes of laundering funds from an illegal gambling business, but that "proceeds" means "gross receipts" in all other cases. <u>Id.</u> at 23 (citing <u>Santos</u>, 128 S. Ct. at 2031). The government further contends that Justice Stevens agreed with the dissenters that "Congress intended the term 'proceeds' to include gross revenues from the sale of contraband . . . ." <u>Id.</u> at 23 (citing <u>Santos</u>, 128 S. Ct. at 2032). Therefore, the government argues, "<u>Santos</u> cannot definitively be read to hold that 'proceeds' means 'net profits' except in cases involving the crime at issue in <u>Santos</u> (operating an illegal gambling business in violation of 18 U.S.C. § 1955)." <u>Id.</u> at 24. The government further argues that "<u>Santos</u> does not overrule Ninth Circuit cases interpreting 'proceeds' broader than the <u>Santos</u> plurality and upholding convictions based on the laundering of gross crime proceeds." <u>Id.</u> (citing <u>United States v. Akintobi</u>, 159 F. 3d 401, 403 (9th Cir. 1998); <u>United States v. Taylor</u>, 239 F.3d 994,

999 (9th Cir. 2001)).

The government further argues that even if <u>Santos</u> applied in this case, it would not change the outcome because the cash that petitioner loaned to Adolphus included profits from drug trafficking. <u>Id.</u> at 25 (citing <u>United States v. Jackson</u>, 167 F.3d 1280, 1284 (9th Cir. 1999); <u>United States v. English</u>, 92 F.3d 909, 916 (9th Cir. 1996)). The government contends that the record proves that at least some portion of the drug money loaned to Adolphus constituted "profits" of drug trafficking activity. <u>Id.</u> at 26. The government argues that it proffered evidence at sentencing that petitioner persuaded Daniel Franco to invest his "drug money" in Adolphus' plan to expand his jet business. <u>Id.</u>

The Court concludes that Supreme Court's decision in <u>Santos</u> does not invalidate petitioner's conviction. 128 S. Ct. 2020 (2008). Generally, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977). However, "[t]his rule only works in instances where 'one opinion can meaningfully be regarded as 'narrower' than another . . . only when that narrow opinion is the common denominator representing the position approved by at least five justices." <u>United States v. Alcan Aluminum Corp.</u>, 315 F.3d 179, 189 (2d Cir. 2003) (quoting <u>King v. Palmer</u>, 950 F.2d 771, 781 (D.C. Cir.1991) (en banc)). In cases, such as this one, in which the fifth vote required to reach a result came in a concurrence that specifically rejected the plurality's reasoning, there is "no law of the land." <u>Id.</u> Therefore, given Justice Stevens' opinion that "proceeds" means "profits" only for the purposes of laundering funds from an illegal gambling business, the Court cannot conclude that <u>Santos</u> announces a "new rule" defining the term "proceeds" to mean "profits" in all statutes. <u>See</u> <u>Schiro v. Summerlin</u>, 124 S. Ct. at 2522. Therefore, the Court continues to use the Ninth Circuit's definition of the term "proceeds" in 18 U.S.C. § 1956 as "that which is obtained ... by any transaction." <u>Akintobi</u>, 159 F.3d at

403. As a result, plaintiff is not entitled to an "opportunity to challenge his sentence in collateral review."

## V.   CONCLUSION

In accordance with the foregoing, the Court hereby DENIES petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

IT IS SO ORDERED.

Dated:  December 3, 2008

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE